UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:12-cv-2266-T-23TBM
    8:09-cr-89-T-23TBM

SAMUEL THAMAR JAMES

_____/

**ORDER**

Samuel Thamar James moves (Doc. 1) under 28 U.S.C. § 2255 to vacate his sentence. James challenges the validity of his conviction for possession with intent to distribute less than five grams of cocaine base. James serves 262 months of imprisonment. The United States admits that James timely moved to vacate. (Doc. 12 at 3) Also, James moves to supplement the motion. (Docs. 4, 23, and 24)

**FACTS**

On February 9, 2009, a Tampa police officer attempted to stop a vehicle for illegal window tint.[1] The officer witnessed the driver, a man with medium-length dreadlocks and a black shirt, drop a plastic bag containing a white substance in a driveway. A test revealed that the plastic bag contained 5.8 grams of cocaine base.

---

[1] This summary of the facts derives from the presentence investigation report and from the circuit court's decision on direct appeal. (Doc. 70 in 09-cr-89)

After the vehicle stopped, the officer saw the driver crawl from the driver's seat to the backseat. The officer approached the vehicle and observed two passengers, each with short hair and a white shirt. The officer identified James, based on his dreadlocks and black shirt, as both the driver and the person who dropped the plastic bag.

## PROCEDURAL HISTORY

Count I of the indictment charged James with possession with intent to distribute five grams or more of a mixture and substance containing cocaine base under 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii). (Doc. 1 in 09-cr-89) In 2009 a jury convicted James of the lesser offense of possession with intent to distribute less than five grams of cocaine base under 21 U.S.C. § 841(b)(1)(C). Offense Level 34 and Criminal History Category VI yielded an advisory guidelines range of 262 to 327 months of imprisonment. The circuit court affirmed James's sentence of 262 months of imprisonment.[2] *United States v. James*, 642 F.3d 1333 (11th Cir. 2011), *cert. denied*, 565 U.S. 958 (2011).

## INEFFECTIVE ASSISTANCE OF COUNSEL

James claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas,*

---

[2] The circuit court remanded in part for the limited purpose of correcting a clerical error in the written judgment.

46 F.3d 1506, 511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). As *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains, *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."

*Strickland*, 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

James must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691–92. To meet this burden, James must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. James cannot meet his burden by showing only that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992); *accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (*quoting Burger v. Kemp*, 483 U.S. 776, 794 (1987)); *Jones v. Barnes*, 463 U.S. 745, 751 (1983) (holding that counsel has no duty to raise a non-frivolous claim).

**Ground One**

Counsel purportedly advised James that the right to testify required James to first cooperate with the United States. (Doc. 1 at 12) James alleges that, but for counsel's advice, James would have testified that he owned the illicit drugs for personal use. James asserts that the exculpatory testimony would have changed the trial's outcome.

A criminal defendant possesses a fundamental constitutional right to testify at trial. *Rock v. Arkansas*, 483 U.S. 44, 51–53 (1987). "Defense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide." *United States v. Teague*, 953 F.2d 1525, 1533 (11th Cir. 1992).

Even if counsel performed deficiently, the following colloquy ensured that James understood fully the right to testify:

THE COURT: At this stage in a criminal case, almost always the defendant has to consider a very important decision, and that is the decision of whether or not that witness will testify. That is not my decision to make by any means.

THE DEFENDANT: Yes, Sir.

THE COURT: But I wanted to discuss some things about that decision with you to make sure that you understand how the law regards that circumstance. Okay?

THE DEFENDANT. Yes, Sir.

THE COURT: First of all, under our system of constitutional law, it is your right to either testify if you choose to do so, or not testify if you choose not to. In other words, you have a right to do either. You, of course, can't do both but you can do either. In ordinary, plain language that is your personal right and your personal decision.

Now, I understand that you have, perhaps, friends and family with whom you have discussed your present circumstances and, of course, are always well advised to seek advice. You have two counsel with you who are familiar with the operation of the court system and familiar with the charges against you and the facts of the case and the rights that you have. But all of those people, including your attorneys, are just advisers for you, and it is not their decision whether you testify. It's yours.

So, for example, if Mrs. Dyer says "I don't think you should testify," I think you should give her view and that of Mr. Hued very careful consideration. Their knowledge of the circumstances here is much greater than yours. But if you ultimately decide, that's your decision, that's the way it will be. Now, do you understand that?

THE DEFENDANT: Yes, sir.

(Doc. 62 at 116–17 in 09-cr-89)

Further colloquy advised James about the burden of proof and about the potential benefits and risks of testifying. (Doc. 62 at 117–19 in 09-cr-89) James confirmed that he understood the right to testify:

> THE COURT: Do you feel comfortable that you understand what your rights are?
>
> THE DEFENDANT: Yes, Sir.
>
> THE COURT: Is there any question that you want to ask me about what I have said?
>
> THE DEFENDANT: No, Sir.

(Doc. 62 at 119–20 in 09-cr-89)

The colloquy shows that James understood that he could testify regardless of whether he cooperated with the United States. James's failure to establish prejudice precludes relief on this ground of ineffective assistance of counsel.

Even if James testified that he owned the illicit drugs for personal use, James fails to show a reasonable probability that a jury would have acquitted him. Because James offers no facts showing personal use and no facts to counter the intent to distribute the illicit drugs, James's claim warrants denial.

**Ground Two**

The Sixth Amendment right to trial by jury guarantees "the presence of a fair cross-section of the community on the venire panel, or lists from which grand and petit juries are drawn." *United States v. Henderson*, 409 F.3d 1293, 1305 (11th Cir. 2005). Convicted by an all-white jury, James alleges that counsel

performed deficiently by failing to challenge the purportedly unlawful venire and by failing to move to dismiss the indictment. (Doc. 1 at 16) But a successful challenge to the venire requires showing that the systematic exclusion of a distinctive group from the jury selection process yielded an unfair and unreasonable under-representation of a distinctive group on the venire. *Duren v. Missouri*, 439 U.S. 357, 364 (1979). Proffering no facts to show the systematic exclusion of African-Americans from the jury selection process, James cannot establish a violation of the Sixth Amendment.[3] And the Middle District of Florida's Plan for the Qualification and Selection of Grand and Petit Jurors, approved by a reviewing panel of the circuit court, complies with the Jury Selection and Service Act of 1968. *United States v. Pritt*, 458 Fed. App'x 795, 799 (11th Cir. 2012). Because counsel has no duty to raise an unsubstantiated claim, James's ineffective assistance of counsel claim fails.

Even assuming deficient performance, James demonstrates no prejudice from counsel's failure to object to the venire. Convicted on a lesser charge of possession with intent to distribute less than five grams of cocaine base, James presents no facts showing a reasonable probability that a jury with a different racial composition would either acquit on the present charge or convict on a lesser offense. *See Jackson v.*

---

[3] James moved (Doc. 78 in 09-cr-89) successfully for leave to inspect the jury selection records. The order granting James's motion stated that copies of the jury selection records "will be sent to James upon payment of six dollars to the clerk." (Doc. 80 at 3 in 09-cr-89) The criminal docket shows that James never paid for the jury selection records. James's redundant request (Doc. 20 at 7) to inspect the jury statistics is denied as moot.

*Herring*, 42 F.3d 1350, 1362 (11th Cir. 1995). The police officer's testimony and the discovery of illicit drugs on the driveway compellingly evidence that James committed the drug crime. James's failure to satisfy *Strickland's* requirements precludes relief on this claim of ineffective assistance of counsel.

**Ground Three**

James re-litigates in this collateral attack whether the inquiry at sentencing about his convictions complies with 21 U.S.C. § 851(b). (Doc. 1 at 17) On direct appeal, the circuit court upheld James's sentence because, under *United States v. Weaver*, 905 F.2d 1466 (11th Cir. 1990), the inquiry at sentencing substantially complied with Section 851(b). *James*, 642 F.3d at 1341. James repeats this claim under the guise of ineffective assistance of appellate counsel. *See United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) ("The district court is not required to reconsider claims of error that were raised and disposed of on direct appeal.").

James alleges that he directed appellate counsel to argue that *Carachuri-Rosendo v. Holder*, 560 U.S. 563 (2010), both overturns *Weaver* and mandates a strict Section 851(b) inquiry at sentencing. (Doc. 1 at 17) James asserts that, but for appellate counsel's failure to follow James's strategy, the circuit court would have vacated the sentence. Advancing a meritless argument based on *Carachuri-Rosendo,* which neither overrules *Weaver* nor mandates a strict Section 851(b) inquiry at sentencing, James cannot show ineffective assistance. *See Chandler*, 240 F.3d at 917.

Also, James alleges that trial counsel performed deficiently by failing to file a Section 851(c) written response contesting James's convictions. (Doc. 1 at 17; Doc. 20 at 10) At the sentencing hearing, counsel affirmed the convictions because James "has not back-peddled from his admissions in the PSR, those stand and remain part of the PSR. He has admitted to that." (Doc. 66 at 27 in 09-cr-89) Counsel argued unsuccessfully that a below-guidelines sentence of ten years of imprisonment "would absolutely work as a deterrent." (Doc. 66 at 20 in 09-cr-89) Counsel's strategy falls within the wide range of professionally competent assistance. *Strickland*, 466 U.S. at 690–91. James cannot meet his burden by showing that the avenue chosen by counsel proved unsuccessful.

**Ground Four**

In response to James's discovery letter, the United States offered to prepare a plea agreement "[i]f Mr. James desires to plea and cooperate." (Doc. 12-2 at 3) According to James, the United States proposed a plea that contemplated a recommendation for a sentence of thirty-five years. (Doc. 1 at 21) James alleges that he directed counsel to counter-offer with a conditional plea that contemplated a recommendation of fifteen years. (Doc. 1 at 21) James asserts that, but for counsel's deficient performance, James would have pleaded guilty, and he would have received a lesser sentence.

But the United States denies proposing a plea. (Doc. 12 at 13) The United States argues that "James has provided no letters, memos, documentation of calls or

visits in which he discussed any plea matters with counsel." (Doc. 12 at 14) In his reply, James offers no rebuttal. (Doc. 20) Whether to offer a plea agreement and whether to include a certain term in that agreement are each a matter of prosecutorial discretion. *See Weatherford v. Bursey*, 429 U.S. 545, 561 (1977) ("[T]here is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial."). "[T]he successful negotiation of a plea agreement involves factors beyond the control of counsel, including . . . the cooperation of the prosecutor, who has no obligation to offer such an agreement." *United States v. Hall*, 212 F.3d 1016, 1022 (7th Cir. 2000).

James speculates that the purported counter-offer would have resulted in a successful plea negotiation and a subsequent recommendation of fifteen years. James offers no facts evidencing that the prosecutor would have exercised discretion and offered a conditional plea. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (holding that vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim). James's speculative allegation that counsel would have obtained a favorable conditional plea agreement fails to establish deficient performance.

James fails to show a reasonable probability that, even if the United States offered a conditional plea, he would have received a lesser sentence. James alleges that, because counsel failed to negotiate a conditional plea, the sentencing lacked both the United States' recommendation of a sentence than fifteen years and a

three-level downward adjustment for acceptance of responsibility. (Doc. 1 at 21) But the United States asserts that James would have pleaded guilty to the charge in the indictment of possession with intent to distribute five grams or more of cocaine base, a charge which yields the same guidelines range of 262 to 327 months of imprisonment.[4] (Doc. 12 at 14) And the United States' recommendation of a sentence of fifteen years would not guarantee receiving a particular sentence. Rule 11(c), Fed. R.Crim. Pro. *See Smith v. United States*, 670 F.2d 145, 147 (11th Cir. 1982). James offers no rebuttal. (Doc. 20) Convicted for the lesser offense of possession with intent to distribute less than five grams (21 U.S.C. §841(b)(1)(C)) and sentenced to the lowest in the same guidelines range (262 to 327 months), James fails to show prejudice.

**Ground Five**

James alleges that trial counsel performed ineffectively by failing to investigate a passenger in the vehicle, Oliver Hodges, and by failing to call Hodges as a witness at trial. (Doc. 1 at 22) James abandons this argument by concurring with the United States' response to Ground Five. (Doc. 20 at 13)

---

[4] With the Section 851 enhancement and a three-level downward adjustment for acceptance of responsibility for the charge in the indictment, James's Offense Level 34 and Criminal History Category VI yields an advisory guidelines range of 262 to 327 months of imprisonment. (Doc. 12 at 14)

**Ground Six**

James alleges that the conviction under 21 U.S.C. § 841, part of the Controlled Substances Act, violates the commerce clause. (Doc. 1 at 23) The Supreme Court soundly rejects James's claim because the Controlled Substances Act criminalizes both intrastate and interstate illegal drug distribution activities without offending the constitution. *See Gonzales v. Raich,* 545 U.S. 1, 15–23 (2005). Again, James cannot show counsel's ineffective assistance based on a meritless argument. *See Chandler*, 240 F.3d at 917.

**First Motion to Supplement**

The Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2255(f), created a limitation for a motion to vacate. On August 9, 2013, nearly a year after the expiration of the one-year limitation in Section 2255(f), James moved to add a new claim to the motion to vacate. (Doc. 4) James alleges that a penalty under 21 U.S.C. § 841(b)(1)(C) requires the possession of at least five grams of cocaine base. Because James possessed less than five grams of cocaine base, James asserts that "the proper sentencing statute is simple possession under 21 U.S.C. § 844." (Doc. 4 at 2)

James alleges that he recently discovered the purported "violation." (Doc. 4 at 3) The United States asserts dismissal of the claim as time-barred. (Doc. 12 at 18) And James presents no cogent argument of entitlement to a new limitation under Section 2255(f)(4), which states that the limitation begins on "the date on which the

facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." Even assuming a timely supplement, James's claim fails.

James misunderstands that possession with intent to distribute a detectable amount of cocaine base suffices for a sentence under Section 841(b)(1)(C). Because the jury found that James possessed with intent to distribute less than five grams of cocaine base, a detectable amount, James fails to show an error in the application of Section 841(b)(1)(C). To the extent that James asserts ineffective assistance based on counsel's failure to challenge Section 841(b)(1)(C) at sentencing, James cannot obtain relief.

**Second Motion to Supplement**

Three years after the AEDPA's one-year limitation expired, James moves to supplement by adding a claim to the motion to vacate. (Doc. 23) James asserts entitlement to a new limitation under Section 2255(f)(3) which begins the limitation on the date the Supreme Court announces a new, retroactive rule of law. (Doc. 23 at 4–5) Even assuming a timely supplement, James's second motion to supplement lacks merit.[5]

James alleges that the United States Sentencing Commission lacks authority to qualify a Florida conviction as a predicate offense under the career-offender

---

[5] Consequently, James's third motion to supplement (Doc. 24), which requests that the court accept as fact the allegations of the second motion to supplement, lacks merit.

guideline. James explains that the Sentencing Commission's authorizing statute, 28 U.S.C. § 994(h), fails to enumerate a controlled-substance conviction under Section 893.13, Fla. Stat. as career-offender predicate.[6]

But "the authority of the Sentencing Commission to decide which offenses count as controlled substance offenses is not limited to the mandate in § 994(h)." *United States v. Russell*, 657 Fed. App'x 894, 895 (11th Cir. 2016). Because the Sentencing Commission can recognize a conviction under Section 893.13 as career-offender predicate, James's challenge to the Sentencing Commission's authority fails. *See United States v. Pearson*, 662 Fed. App'x 896, 901 (11th Cir. 2016) ("Even if § 994(h) does not authorize the inclusion of state-law crimes such as those in § 893.13 as career-offender predicates, the Commission has the authority to include those crimes under § 994(a)."). To the extent that James asserts ineffective assistance for counsel's failure to challenge the Sentencing Commission's authority, James cannot show either deficient performance or prejudice.

---

[6] § 994(h)(2) states that:

> The Commission shall assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized for categories of defendants in which the defendant is eighteen years old or older and ... (2) has previously been convicted of two or more prior felonies, each of which is ... (A) a crime of violence ... or ... (B) an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841), sections 1002(a), 1005, and 1009 of the Controlled Substances Import and Export Act (21 U.S.C. 952(a), 955, and 959), and chapter 705 of title 46 [46 USCS §§ 70501 et seq.].

**Evidentiary Hearing**

James requests an evidentiary hearing. This case warrants no evidentiary hearing because the face of the motion, the supplements, the annexed exhibits, and the earlier proceedings show that the movant is not entitled to relief. *Broadwater v. United States,* 292 F.3d 1302, 1303 (11th Cir. 2002).

Accordingly, the motion under Section 2255 to vacate the sentence (Doc. 1) is **DENIED**. The clerk must enter a judgment against James and close this case.

## DENIAL OF BOTH
## CERTIFICATE OF APPEALABILITY
## AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

James is not entitled to a certificate of appealability. A prisoner moving under Section 2255 has no absolute entitlement to appeal a district court's denial of his motion to vacate. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability. Section 2253(c)(2) permits issuing a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, James must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). Because James fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, James is entitled to neither a certificate of appealability nor an appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. James must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on May 8, 2017.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE